Argued and submitted September 18, decision of Court of Appeals reversed, and case remanded to Court of Appeals for further proceedings November 6, 2008

# H. H. TAYLOR,
## C. A. Taylor,
*Petitioners on Review,*

*and*

# TAYLOR & TAYLOR, INC.,
an Oregon corporation,
*Cross-Respondent,*

*v.*

# RAMSAY-GERDING CONSTRUCTION COMPANY,
an Oregon corporation,
*Defendant,*

*and*

# CHEMREX, INC.,
a foreign corporation,
*Respondent on Review.*

# RAMSAY-GERDING CONSTRUCTION COMPANY,
an Oregon corporation,
*Third-Party Plaintiff,*

*v.*

# TFC ENTERPRISES, INC.,
an Oregon corporation,
dba Finishers Drywall;
ChemRex, Inc.,
a foreign corporation;
Century West Engineering Corporation,
an Oregon corporation;
Wyatt Architects and Associates, P. S.;
and Donald Trail,
*Third-Party Defendants.*

(CC 015188; CA A127434; SC S055609)

196 P3d 532

James N. Westwood, Stoel Rives LLP, Portland, argued the cause and filed the briefs for petitioners on review H. H. Taylor and C. A. Taylor. With him on the briefs was David Hilgemann, Salem.

Todd S. Baran, Todd S. Baran PC, Portland, argued the cause and filed the briefs for respondent on review ChemRex, Inc.

Ralph C. Spooner, Spooner Much & Ammann PC, Salem, argued the cause and filed the briefs for *amicus curiae* Ramsay-Gerding Construction Company.

BALMER, J.

## BALMER, J.

This breach of warranty action requires us to determine when an agent has apparent authority to bind a principal under Oregon law. Apparent authority arises when actions of a principal cause a third party reasonably to believe that an agent has authority to act for the principal on some particular matter. While constructing a hotel, plaintiffs became concerned about the possibility that their new stucco system might rust, and their contractor organized a meeting with the stucco installer and an agent of the stucco manufacturer, among others. At that meeting, the agent made a number of representations to plaintiffs, including that they had a five-year warranty, which he later confirmed in writing. A jury found that the agent had apparent authority to provide the warranty and that the principal had breached that warranty, and the trial court entered judgment for plaintiffs. The Court of Appeals reversed, holding that the agent did not have apparent authority to bind the principal. *Taylor v. Ramsay-Gerding Construction Co.*, 215 Or App 670, 172 P3d 251 (2007). For the reasons set out below, we reverse and remand to the Court of Appeals.

We state the facts in the light most favorable to plaintiffs, because they prevailed before the jury. *Jensen v. Medley*, 336 Or 222, 226, 82 P3d 149 (2003). In 1998, plaintiffs, H. H. (Todd) Taylor and his wife, C. A. Taylor, began construction of a hotel in Lincoln City. They hired Ramsay-Gerding Construction Company as their general contractor. In turn, Ramsay-Gerding hired a subcontractor to install stucco plaster exterior siding and accompanying accessories. Pursuant to the stucco installer's recommendation, Ramsay-Gerding proposed using a stucco system called "SonoWall," manufactured by ChemRex, Inc., and plaintiffs approved that proposal.

During construction, plaintiff Todd Taylor grew concerned about possible rusting of the galvanized fittings that were included in the stucco system. In September 1998, Ramsay-Gerding halted construction until the problem could be solved and organized a meeting to discuss the situation.

Among those present at the meeting were Taylor, a representative of Ramsay-Gerding, and a representative of the stucco installer. Additionally, Ramsay-Gerding's representative, pursuant to communications with the stucco installer, brought Mike McDonald, ChemRex's territory manager for Oregon, to the meeting as a ChemRex "representative." In response to Taylor's concerns, McDonald asserted that the SonoWall system was "bullet-proof" against rust but noted that a corrosion inhibitor would provide further protection. When Taylor was still unconvinced, McDonald stated, "Mr. Taylor, did you know you're getting a five-year warranty?" By the end of that meeting, Taylor agreed to go forward, with the addition of the corrosion inhibitor.

In July 1999, after construction had been completed, but before all construction funds had been disbursed, McDonald sent a letter to the stucco installer on ChemRex letterhead. The letter stated, in part, "This letter is to confirm that [ChemRex] will warrantee the Sonowall stucco system for five years covering the material and labor on this project starting in March of 1999," and was signed "Mike McDonald, Territory Manager OR." The stucco installer eventually sent that letter to Ramsay-Gerding, who sent it to plaintiffs, and McDonald stated at trial that he had intended the warranty to extend to plaintiffs.

At some point in late 1999, an employee of plaintiffs' company noticed discoloration on the exterior walls of the hotel. By the spring of 2000, the employee had realized that the discoloration was rust and contacted Taylor. In the summer of 2000, Taylor informed Ramsay-Gerding of the problem, and representatives from ChemRex and the stucco installer came to the hotel to examine the stucco system. However, no one ever fixed the problem.

In 2001, plaintiffs initiated this action against Ramsay-Gerding for breach of the construction contract. In April 2002, Ramsay-Gerding filed a third-party complaint against ChemRex, alleging, among other things, that ChemRex had breached its warranty of the stucco system. Ramsay-Gerding also sought indemnity and contribution from ChemRex for any damages that plaintiffs might recover

from them. In August 2003, plaintiffs amended their complaint to add a claim against ChemRex for breach of express warranty.[1]

In 2004, plaintiffs and Ramsay-Gerding moved to bifurcate their breach of express warranty claims against ChemRex from the other claims and defenses in the case. The trial court granted that motion, and, in July 2004, the express warranty claims were tried to a jury. At the close of the evidence, ChemRex moved for a directed verdict, arguing that there was insufficient evidence for the jury to find that McDonald had authority to act for ChemRex in giving the warranty. The trial court determined that the evidence did not support a finding of actual authority but allowed the jury to determine whether McDonald had apparent authority. The jury found for plaintiffs on the breach of warranty claim, which necessarily included a determination that McDonald had apparent authority to provide the warranty. The jury found that plaintiffs had suffered damages in the amount of $775,000. However, the jury also found that plaintiffs, as well as ChemRex, had been negligent and that plaintiffs were 49 percent at fault for the damages that they suffered. Thus, the trial court reduced the damages by 49 percent and entered a judgment in favor of plaintiffs in the amount of $395,250.[2]

Plaintiffs appealed the trial court's submission of ChemRex's comparative fault defense to the jury. ChemRex cross-appealed, arguing, *inter alia*, that the trial court had erred in denying its motion for a directed verdict on the issue of apparent authority. The Court of Appeals agreed with ChemRex that its motion for a directed verdict should have

---

[1] In April 2004, the individual plaintiffs joined their development company, which operates the hotel, as a plaintiff on the breach of warranty claim. The jury found that the development company did not file its claim within the time required by law. On appeal, plaintiffs argued that the statute of limitations defense should not have been submitted to the jury, but the Court of Appeals rejected that argument as unpreserved. *Taylor v. Ramsay-Gerding Construction Co.*, 215 Or App 670, 690-94, 172 P3d 251 (2007). Plaintiffs did not petition for review of that issue, and we do not address it. References to "plaintiffs" in this opinion are to the individual plaintiffs.

[2] From the record, it appears that plaintiffs have not pursued the other claims in the case, including their negligence claims against Ramsay-Gerding and ChemRex.

been granted and remanded for entry of judgment in favor of ChemRex. *Taylor*, 215 Or App at 694. Because it reversed the judgment in favor of plaintiffs, the court did not reach the comparative fault issue. *Id.* As to the apparent authority issue, the Court of Appeals applied this court's decision in *Badger v. Paulson Investment Co., Inc.*, 311 Or 14, 803 P2d 1178 (1991), reasoning that McDonald's role as selling agent and his title of territory manager were insufficient to establish apparent authority to provide a warranty on ChemRex's behalf. Instead, to establish apparent authority, the Court of Appeals concluded that plaintiffs were required to offer evidence

> "(1) [of] further conduct by ChemRex conferring on [McDonald] the authority to perform the specific function at issue here—warranting the product sold—or (2) that persons in McDonald's position *customarily* have such authority and that plaintiffs knew that McDonald was a person in that position."

*Taylor*, 215 Or App at 685 (emphasis in original). Finding no such evidence in the record, the Court of Appeals held that the trial court had erred in denying ChemRex's motion for a directed verdict. *Id.* at 690. We allowed plaintiffs' petition for review.

At the outset, we note that ChemRex does not dispute that the trial court properly instructed the jury on the legal standard for determining whether an agent has apparent authority to bind a principal. Instead, ChemRex argues only that there was insufficient evidence under that standard for the jury to have found apparent authority here. We are mindful that, in such a case, we "cannot set aside a jury's verdict unless there was no evidence from which the jury could have found the facts necessary to establish the elements of plaintiff's cause of action." *Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 159, 61 P3d 918 (2003). Moreover, because the jury found for plaintiffs, we construe all reasonable inferences from the evidence in their favor. *Id.*

We begin with a review of some basic principles of agency law. Generally speaking, an agent can bind a principal only when that agent acts with actual or apparent authority. *Restatement (Second) of Agency* § 140 (1958); *see*

*also Jensen*, 336 Or at 231 (principal is liable for acts of non-servant agent only when agent acts with actual or apparent authority). Actual authority may be express or implied. When a principal explicitly authorizes the agent to perform certain acts, the agent has express authority. However, most actual authority is implied: a principal implicitly permits the agent to do those things that are "reasonably necessary" for carrying out the agent's express authority. *Wiggins v. Barrett & Associates, Inc.*, 295 Or 679, 686-87, 669 P2d 1132 (1983). In contrast, a principal also may be bound by actions taken that are "completely outside" of the agent's actual authority, if the principal allows the agent to appear to have the authority to bind the principal. Such a circumstance is called "apparent authority." *Id.* at 687.

█  For a principal to be bound by an agent's action, the principal must take some affirmative step, either to grant the agent authority or to create the appearance of authority. An agent's actions, standing alone and without some action by the principal, cannot create authority to bind the principal. Thus,

> " '[a]pparent authority to do any particular act can be created only by some conduct of the principal which, when reasonably interpreted, causes a third party to believe that the principal consents to have the apparent agent act for him on that matter.' "

*Id.* at 687-88 (quoting *Jones v. Nunley*, 274 Or 591, 595, 547 P2d 616 (1976)). Additionally, the third party must " 'rely on that belief' " when dealing with the agent. *Wiggins*, 295 Or at 688 (quoting *Jones*, 274 Or at 595).

█ █  Here, the key issue is whether the principal—ChemRex—took sufficient action to create the appearance of authority on the part of McDonald. Apparent authority requires that the principal engage in some conduct that the principal " 'should realize' " is likely to cause a third person to believe that the agent has authority to act on the principal's behalf. *Badger*, 311 Or at 24-25 n 9 (quoting *Restatement* at § 27 comment a). Although the focus of that inquiry is on the principal's conduct, the third party need not receive information respecting either the nature or the extent of that conduct directly from the principal:

" 'The information received by the third person may come directly from the principal by letter or word of mouth, from authorized statements of the agent, from documents or other indicia of authority given by the principal to the agent, or from third persons who have heard of the agent's authority through authorized or permitted channels of communication.' "

*Id.* Thus, information that has been channeled through other sources can be used to support apparent authority, as long as that information can be traced back to the principal.

A principal can create the appearance of authority "by written or spoken words or any other conduct * * *." *Restatement* at § 27. For example, when a principal clothes an agent with actual authority to perform certain tasks, the principal might create apparent authority to perform other, related tasks. *See Badger*, 311 Or at 26 (principal's allowance of sales presentation on principal's property lent weight to apparent authority to sell). Additionally, by appointing an agent to a position that carries " 'generally recognized duties[,]' " a principal can create apparent authority to perform those duties. *Id.* at 24-25 n 9 (quoting *Restatement* at § 27 comment a). Similarly, when a distant principal places an agent "in charge of a geographically distinct unit or branch[,]" that may lend weight to a finding of apparent authority, depending on the circumstances. *Restatement (Third) of Agency* § 3.03 comment d (2006). For example, if the principal structures its organization so that the "branch manager"—or territory manager—"makes decisions and directs activity without checking elsewhere in the organization[,]" that may create apparent authority to commit the principal to similar transactions. *Id.*

We turn to the application of those principles to the actions of ChemRex at issue here. Using the standards discussed above, we conclude that there is sufficient evidence in the record to support the jury's finding that McDonald acted with apparent authority when he warranted the stucco system to plaintiffs. The first issue is whether ChemRex took sufficient steps to create the apparent authority to provide a warranty. Significantly, ChemRex gave McDonald actual authority to help in processing warranties and to communicate with customers—about warranties—using ChemRex

letterhead. Indeed, McDonald used that authority to confirm, in his July 1999 letter, that plaintiffs had a five-year warranty. Furthermore, ChemRex clothed McDonald with the title of "territory manager" and gave him the actual authority to visit job sites and to solve problems, such as plaintiffs' rust problem, that he found there. McDonald also had the authority to sell an additional product intended to address the very performance at issue here and to answer plaintiffs' questions about the system, which he did in response to plaintiffs' stated concerns.

■ The next issue is whether there was evidence from which the jury could have concluded that those actions by ChemRex reasonably led plaintiffs to believe that McDonald was authorized to provide the warranty. ChemRex argues that McDonald's title could not have led plaintiffs to believe that McDonald was so authorized, because plaintiffs were unaware of that title until after construction was completed. However, Taylor testified that he believed that McDonald "was the person that was in charge of or supervising this area, the coastal area. He was the guy that you had to get your answers from." He also stated that he knew that McDonald "represented" ChemRex. It is not necessary that plaintiffs knew McDonald's exact title; they knew generally that McDonald was in charge of the geographical area in which their project was located and that he represented ChemRex. In any event, McDonald used his title of territory manager for Oregon when signing the July 1999 letter confirming the five-year warranty. Because, as discussed below, the jury was permitted to find that plaintiffs relied on that letter, it is further evidence that plaintiffs knew of McDonald's position.

ChemRex also implies that McDonald's position is irrelevant because ChemRex did not directly inform plaintiffs of that position. But it was not necessary that plaintiffs learn of McDonald's position directly from ChemRex; receiving that information through an intermediary, such as a contractor, would be sufficient. The general contractor knew that McDonald was the territory manager for Oregon, or "[ChemRex] for Oregon, so to speak," and the stucco installer knew that he was in charge of the "Oregon area." It was permissible for the jury to infer that plaintiffs learned the

information from the general contractor and the stucco installer.

Because of McDonald's position and his actual authority to help allay plaintiffs' concerns about rust, it was reasonable for plaintiffs to infer that one of the ways in which McDonald had authority to allay their concerns was by warranting the system for five years. *See Badger*, 311 Or at 26 (finding apparent authority in part based on similarity of the task at issue to tasks within agents' actual authority). That is particularly true here, because there was evidence in the record that five years was a reasonable length of time for such a warranty.

The third issue is whether plaintiffs reasonably relied on McDonald's apparent authority to provide the warranty. ChemRex does not dispute that plaintiffs relied on McDonald's statements and conduct at the September 1998 meeting in moving forward with the construction project. However, ChemRex argues that the evidence was insufficient to show that plaintiffs had relied on the 1999 letter, because construction already had been completed when plaintiffs received the letter. We disagree. Plaintiffs' general contractor testified that it was customary to obtain all warranties in writing before completing the "close-out" process and paying the retainage. Although he could not recall specifically whether that had happened here, he was confident that that procedure had been followed. Further, plaintiffs' stucco installer testified that he had asked for the warranty in writing because of plaintiffs' concerns, and Taylor testified that obtaining the warranty in writing was "important" to him. Although the evidence does not conclusively demonstrate that plaintiffs relied on the letter from McDonald, the jury was entitled to find, from the evidence discussed above, that plaintiffs did so rely.[3]

---

[3] We also reject ChemRex's argument that, for use of ChemRex letterhead to support apparent authority for McDonald to act on its behalf, plaintiffs had to prove that, within the ChemRex organization, "(1) * * * a person who uses company letterhead customarily has warranty authority, and (2) that [plaintiffs] knew that[.]" Such an analysis would essentially require us to find actual authority before considering the letterhead among the facts and circumstances lending weight to apparent authority and would be inconsistent with the well-established elements of apparent authority discussed in the text above.

In sum, plaintiffs presented sufficient evidence for the jury to find that McDonald had apparent authority to provide the warranty on ChemRex's behalf. We therefore reverse the Court of Appeals decision on that issue. As noted, because the Court of Appeals concluded that ChemRex's motion for a directed verdict should have been granted, it did not address ChemRex's other assignments of error or plaintiffs' argument that the trial court erred in submitting ChemRex's comparative fault defense to the jury. We therefore remand to the Court of Appeals so that it may consider those issues.[4]

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

---

[4] At oral argument, counsel for plaintiffs suggested that this case might be more promptly resolved if this court were to decide at least the comparative fault issue, rather than remand the entire case to the Court of Appeals. We have considered that request, and we conclude that the remaining assignments of error are best addressed in the Court of Appeals in the first instance.