LANDAU, J.,
dissenting.
The majority holds that the City of Lebanon may have committed an unfair labor practice because a single one of its City Council members, Margaret Campbell, wrote a letter to the editor of a local newspaper expressing her personal opinion about labor unions. The majority reaches that conclusion despite the fact that Campbell wrote the letter “as an individual and not a reflection of a majority of the City Council, the City or [her] employer.” The majority ignores the fact that she was not authorized to speak for the city; that she was not designated as the city’s representative in collective bargaining negotiations; and that, in fact, under the terms of the city charter, she had no independent authority whatsoever.
The majority’s decision is wrong. It cannot be reconciled with the terms of the statute that the city is supposed to have violated. Nor can it be squared with settled rules of statutory construction. It is justified, not by reference to what the governing statute actually says, but by the majority’s views about the overriding policies of that statute, informed by an extended analysis of case law construing a federal statute that does not even apply here. Because I cannot join in that decision, I must respectfully dissent.
*836 The Public Employees Collective Bargaining Act (PECBA) provides that it is an unfair labor practice for “a public employer or its designated representative” to engage in any of a prohibited list of actions. ORS 243.672(1). The law thus provides that an unfair labor practice may be committed on the one hand by a government entity — “a public employer” — and on the other hand by an individual — “its designated representative.” The question in this case is whether Campbell is a government entity or a person designated to represent a government entity.
She is neither. Certainly, Campbell is not a government entity. She is a single member of the seven-member governing body of the City of Lebanon. But in no reasonable sense of the term can it be said that she is the City of Lebanon, any more than it can be said that a single one of the 90 members of the Oregon Legislative Assembly is the State of Oregon. Moreover, no party claims that she is the city’s “designated representative.” That should be the end of the matter.
The majority nevertheless concludes that the City of Lebanon may have committed an unfair labor practice based on the unauthorized act of its individual council member. The majority concludes that, in writing her letter, Campbell acted as the city’s “designated representative.”
The majority arrives at that conclusion by reasoning that, although PECBA does not define the term “designated representative,” it does define a different term that at least comes close — “public employer representative.” And the statute defines that term as merely including one who has been “specifically designated by the public employer to act in its interests in all matters dealing with employee representation” and related matters. ORS 243.650(21). That, says the majority, means that the term could include other things as well. To determine what other things the term could embrace, the majority turns to case law construing the federal National Labor Relations Act (NLRA), which it reads as holding that unfair labor practices may be committed by any person whom an employee “reasonably believes” speaks on behalf of the employer, regardless of whether the employer designated the individual to speak on its behalf or *837 took any other action to clothe the individual with apparent authority.
The majority’s reasoning does not withstand scrutiny.
To begin with, it is at odds with the text of the statute. ORS 243.672(1) plainly provides that the only individual who may commit an unfair labor practice is a public employer’s “designated representative.” Although the majority refers to the ordinary meaning of the term “representative,” it curiously omits any reference to the term “designated.” In fact, it reads the word out of the statute entirely. In the majority’s view, an individual may commit an unfair labor practice if an employee reasonably believes the individual speaks for the employer, regardless of whether the employer designated the individual to act on its behalf. Longstanding principles of statutory construction instruct that, whenever possible, we are to give effect to all of a statute’s terms. See, e.g., State v. Cloutier, 351 Or 68, 98, 261 P3d 1234 (2011) (“[I]f possible, we give a statute with multiple parts a construction that will give effect to all of those parts.” (Internal quotation marks omitted.)); Owens v. Maass, 323 Or 430, 437, 918 P2d 808 (1996) (“[W]henever possible, this court must construe different provisions of a legislative enactment so as to give effect to each provision.”). The majority fails to explain why it is not possible to give effect to the word “designated” as it is used in ORS 243.672(1).
The fact is that it is entirely possible to give effect to all statutory terms in ORS 243.672(1). The term “designated representative” is not defined in the statute. We generally assume that the legislature intended undefined statutory phrases to be given their ordinary meaning. See, e.g., OR-OSHA v. CBI Services, Inc., 356 Or 577, 589, 341 P3d 701 (2014) (“In the absence of evidence to the contrary, we assume that the legislature intended words of common usage to be given their ordinary meanings.”). The relevant dictionary definition of the word “designate” plainly requires some action by a designating party:
“4 a : to decide upon : nominate, delegate, appoint; esp : to assign officially by executive or military authority <the operating agency last designated by the president> <the *838 tanks had been designated to exploit a breakthrough of the enemy’s defenses —R. D. Gardner> b : to induct in a rank or position <the supreme council is designated as the highest organ of state power> <the duke had been designated as king of a puppet state> c : to choose and set apart (as by public will or in the process of government administration) <a successful designating petition places the name of the candidate on the primary ballot —Bk. of Civic Definitions> ccontrol dams designated for construction <finally Queen Victoria was asked to ~ a site —B. K. Sandwell>
«* * * * *
“syn NAME, NOMINATE, ELECT, APPOINT: DESIGNATE may apply to choosing or detailing a person or group for a certain post by a person or group having power or right to choose <the following deputies were designated by the three ministers to carry on the council’s work —Americana Annual> <the vice-chairman is elected from among the commissioners, and the president designates the chairman ■ — Current Biog.>.”
Webster’s Third New Int’l Dictionary 612 (unabridged ed 2002).
Thus, as enacted by the legislature, ORS 243.672(1) provides that an unfair labor practice may be committed either by a public employer or by a person that has been named, nominated, elected, appointed, or assigned the position of representative of the public employer. By its terms, it covers no others.
To be sure, reading the statute as actually written gives it a narrower scope than the majority appears to desire. It leaves out individuals who have not been designated as representatives of a public employer but who might be perceived to be acting on behalf of a public employer. That may well be the case. But our job is to take a statute as we find it, not to rewrite it to conform with the policies that we suppose the legislature may have had in mind, but did not actually enact into law. Wyers v. American Medical Response Northwest, Inc., 360 Or 211, 221, 377 P3d 570 (2016) (“We are obligated to take a statute as we find it.”).
Even assuming for the sake of argument that we may ignore the reference to a public employer’s “designated *839 representative” in ORS 243.672(1) and substitute the broader term “public employer representative” mentioned elsewhere in PECBA, the majority’s reasoning still fails to conform to well-established principles of statutory construction.
As the majority notes, ORS 243.650(21) provides that the term “public employer representative” includes one who is “specifically designated” to represent the employer. The statute leaves open the possibility that others not specifically designated may also be included. Its phrasing reflects an obvious parallel to common-law principles of agency, with which we presume the legislature was familiar. See, e.g., State v. Ramos, 358 Or 581, 596, 368 P3d 446 (2016) (we presume that the legislature is aware of existing common law); Blachana, LLC v. Bureau of Labor and Industries, 354 Or 676, 691, 318 P3d 735 (2014) (same). And, when common-law principles would otherwise apply, we do not assume that the legislature intended to alter them unless there is statutory text indicating such an intention. See, e.g., ODOT v. Alderwoods (Oregon), Inc., 358 Or 501, 524, 366 P3d 316 (2015) (“Nothing in the statutory text suggests that, by providing such a procedure, the legislature intended to alter the common law”).
In this case, common-law principles of apparent authority are well settled. There are essentially two categories of agents — those whose authority is actual and those whose authority is “apparent.” See Taylor v. Ramsay-Gerding Construction Co., 345 Or 403, 409, 196 P3d 532 (2008) (“Generally speaking, an agent can bind a principal only when that agent acts with actual or apparent authority”). ORS 243.650(21), in referring to those who are “specifically designated” to act as the employer’s representative in collective bargaining and related matters, appears to capture the former type of agent. That leaves only the latter type, those whose authority is apparent, but not actual.
Under Oregon law, however, the liability of a principal for the acts of one with apparent authority is predicated on a showing that the principal engaged in some affirmative conduct that created the appearance of authority — that is, conduct that caused a third party reasonably to believe that the principal had consented to have *840 the apparent agent act on the principal’s behalf. See, e.g., Eads v. Borman, 351 Or 729, 736, 277 P3d 503 (2012) (apparent authority “can be created only by some conduct of the principal which, when reasonably interpreted, causes a third party to believe that the principal consents to have the apparent agent act for him on that matter”). An agent’s actions, by themselves, are not sufficient. Taylor, 345 Or at 410 (“An agent’s actions, standing alone and without some action by the principal, cannot create authority to bind the principal.”).
In this case, it is undisputed that the city took no action nor engaged in any conduct that created the appearance that Campbell had authority to speak for it on collective bargaining and related matters. In other words, even allowing for the majority’s substitution of “public employer representative” for the statutory phrase “designated representative,” there is no statutory basis for concluding that Campbell was such a public employer representative in this case.
In reaching its contrary conclusion, the majority dispenses with those general principles of agency law — in particular, the requirement that a principal take some action to clothe an agent with apparent authority — without citing any statutory wording that suggests the legislature intended to do so. Rather, it relies on federal court decisions interpreting the provisions of the NLRA setting out who may commit an unfair labor practice under that federal law. Here, the majority strays far from well-established principles of statutory construction.
Generally, when the Oregon legislature borrows statutory wording from another jurisdiction, we assume that, in the process, the legislature also borrows existing controlling case law interpreting that legislation. Jones v. General Motors Corp., 325 Or 404, 418, 939 P2d 608 (1997) (“If the Oregon legislature adopts a statute or rule from another jurisdiction’s legislation, we assume that the Oregon legislature also intended to adopt the construction of the legislation that the highest court of the other jurisdiction had rendered before adoption of the legislation in Oregon.”). But it bears some emphasis that the critical prerequisite is that *841 the Oregon legislature borrowed statutory wording from the other jurisdiction. If the legislature, for example, borrows only part of the text of an enactment from another jurisdiction, then the rule applies only to the part of the text that the legislature actually borrowed, and not to other parts of the other jurisdiction’s law.
Taylor v. Baker, 279 Or 139, 566 P2d 884 (1977), illustrates the point. At issue in that case was the proper construction of Oregon’s summary judgment rule, some of which had been patterned after Rule 56 of the Federal Rules of Civil Procedure. One subsection of the federal rule — Rule 56(d) — the legislature had not adopted. This court concluded that it was obliged to give great weight to “federal cases interpreting those aspects of Rule 56, other than subsection (d) thereof, and decided prior to the enactment of the state’s summary judgment statute.” Id. at 142 n 2 (emphasis added); see also Jones, 325 Or at 418 (same). Thus, the court held that federal cases informed our interpretation of the provisions borrowed from the federal law, but not of the provisions that departed from the text of the federal rule.
Here, the majority disregards that settled rule of construction. The Oregon legislature may well have borrowed parts of PECBA from the NLRA: specifically, the provisions that define what constitutes an unfair labor practice. But it did not borrow every provision from the NLRA. See Elvin v. OPEU, 313 Or 165, 175 n 7, 832 P2d 36 (1992) (although similar in some respects, PECBA “is not identical to the NLRA”). Significantly, it did not borrow the definition of who may commit an unfair labor practice.
That comes as no surprise. The NLRA is a private sector labor statute and prohibits a private “employer” from engaging in any unfair labor practice. 29 USC § 158(a). As defined by the NLRA, the term “includes any person acting as an agent of an employer, directly or indirectly.” 29 USC § 152(2). It disclaims ordinary agency requirements of express authorization or ratification. 29 USC § 152(13). Moreover, it expressly excludes public employers, such as the federal government, any state government, or any subdivision of state government. 29 USC § 152(2).
*842 The Oregon legislature did not adopt those provisions of the NLRA in enacting PECBA, a public sector labor statute. In particular, in spelling out which individuals may engage in an unfair labor practice, the Oregon legislature rejected the phrasing of the NLRA that refers to “any person acting as an agent of an employer, directly or indirectly” and specified instead that such forbidden practices may only be committed by a public employer’s “designated representative,” a term that nowhere appears in the federal law. Moreover, the Oregon legislature declined to include the provision in the NLRA that disclaims the application of certain ordinary principles of agency law. In consequence, there is no textual connection between the state and federal statutes that would provide the basis for concluding that preexisting cases interpreting the federal law inform the meaning of the state law.
The majority nevertheless resorts to federal case law interpreting the NLRA for four reasons. None is availing.
First, the majority observes that, “[i]n many respects, PECBA was patterned after the NLRA,” including parallel statements of policy and definitions of what constitutes an unfair labor practice. AFSCME Council 75 v. City of Lebanon, 360 Or 809, 817, 388 P3d 1028 (2017). That, however, is not how the borrowed-statute canon works. The justification for the canon is the idea that, the legislature having borrowed statutory text from another jurisdiction, it is fair to assume that the legislature was aware of controlling case law construing that text. See, e.g., Lindell v. Kalugin, 353 Or 338, 355, 297 P3d 1266 (2013) (“As a general rule, when the Oregon legislature borrows from a statute originating in another jurisdiction, there is a presumption that the legislature borrowed controlling case law interpreting the statute along with it.”). In that light, it makes no sense to say that, because the Oregon legislature borrowed some text from a federal statute, we may look to federal case law construing provisions of the federal statute that the Oregon legislature chose not to adopt.
Second, the majority observes that this court has looked to federal case law interpreting the NLRA in a number of previous PECBA cases. 360 Or at 825-26. True enough. *843 But the court did so only with respect to case law construing portions of the NLRA that the Oregon legislature actually adopted. InElvin, 313 Or 165, for example, the court addressed whether the provision of PECBA codified at ORS 243.676(2)(c) authorized the Employment Relations Board to order refunds of unlawfully collected fair share payments. The court looked to federal NLRA cases construing “the provision from which ORS 243.676(2)(c) is derived.” Id. at 178. Such cases are perfectly consistent with the borrowed-statute canon of construction. The majority’s opinion in this case is not.
Third, in a footnote, 360 Or at 824 n 7, the majority insists that, in any event, there is the required textual connection between PECBA and the NLRA in that both statutes use the word “employer.” It is certainly true that both state and federal statutes use the same word. But it is also beside the point, which is that the state and federal laws define that word differently. And it is precisely the definitional differences that undercut any reliance on the federal law to inform the meaning of PECBA.
Fourth, in the same footnote the majority offers the alternative argument that, under this court’s opinion in State v. Walker, 356 Or 4, 23 n 9, 333 P3d 316 (2014), textual differences between state and federal statutes are no impediment to applying the borrowed-statute canon. With respect, the majority reads too much into that decision. In Walker, the court addressed the Oregon racketeering statute’s definition of the term “enterprise,” which was modeled after the federal statute’s definition of the same term. The court noted that the Oregon definition altered “somewhat” the wording of the federal definition “to clarify the expansive scope of the term and thereby avoid interpretative issues that were arising in federal courts.” Id. The slight textual differences, in other words, did not alter the substance of the definition that the Oregon legislature borrowed from the federal statute. The same cannot be said for the differences between the ways that PECBA and the NLRA treat the word “employer.” As I have pointed out, there are significant differences between the ways that the state and federal law define the term. The two definitions, in fact, are inconsistent; among other things, the federal law expressly excludes public employers while the state law applies only to public *844 employers. In short, there is simply no basis for looking to federal case law construing the NLRA for guidance in interpreting the provisions of PECBA at issue in this case.
Even assuming for the sake of argument that it is appropriate to substitute the phrase “public employer representative” for the statutory term “designated representative” and that it is appropriate to look to federal case law to interpret that substituted phrase, the federal case law does not provide support for the conclusion that the majority draws from it. The majority relies on some broad statements in a number of federal court opinions, which the majority reads as dispensing with general principles of agency law in determining who has committed an unfair labor practice. The majority’s reading of the federal case law, however, is mistaken.
As originally enacted, the NLRA defined an “employer” who could engage in an unfair labor practice to include “any person acting in the interest of an employer, directly or indirectly.” 49 Stat 450 (1935). The question arose whether the law required express authorization or ratification for an employer to be liable for the unfair labor practice of an individual acting in its interest. The United States Supreme Court answered that question in the negative in International Ass’n of Machinists, Tool and Die Makers Lodge No. 35 v. Labor Board, 311 US 72, 80, 61 S Ct 83, 85 L Ed 50 (1940), and H. J. Heinz Co. v. Labor Board, 311 US 514, 521, 61 S Ct 320, 85 L Ed 309 (1941).
In response to those decisions, in 1947 Congress enacted amendments to the NLRA as part of what is known as the Taft-Hartley Act. Among other things, the amendments modified the definition of an “employer” to include “any person acting as an agent of an employer, directly or indirectly.” 29 USC § 152(2) (emphasis added). It also, as I have noted earlier, specifically provided that, “[i]n determining whether any person is acting as an ‘agent’ of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.” 29 USC § 152(13). The latter amendment essentially codified the Supreme Court’s holdings in International Association of Machinists and Heinz. Legislative history of the Taft-Hartley *845 Act makes clear that, in providing that actual authorization or ratification is not required, Congress intended that ordinary common-law agency principles otherwise do apply. See generally Local 1814, Intern. Longshoremen’s Ass’n, AFL-CIO v. NLRB, 735 F2d 1384, 1394 (DC Cir 1984) (“Beyond doubt, the legislative intent of this provision was to make the ordinary law of agency applicable to the attribution of individual acts to both employers and unions.”); NLRB v. International Longshoremen’s and Warehousemen’s Union, Local 10, 283 F2d 558, 563 (9th Cir 1960) (noting that “Senator Taft, the life-force behind the bill as enacted, repeatedly remarked on the floor of the Senate that common law rules of agency were to govern the question of who acted for whom for purposes of determining culpability under the Act”).
Since the enactment of the Taft-Hartley Act, the National Labor Relations Board has consistently turned to common-law agency principles in determining whether an employer has engaged in an unfair labor practice based on the actions of one of its employees. In fact, early decisions of the NLRB relied on the Restatement of Agency in expressly holding that apparent authority under the NLRA requires “written or spoken words or any other conduct of the principal” that causes a third person reasonably to believe that the agent has authority to act for that principal. See, e.g., Nevada Tank & Casing Co., 144 NLRB 123, 129 (1963) (quoting Restatement of Agency § 27). As the NLRB explained more recently, “[a]pparent authority is created through a manifestation by the principal to a third party that supplies a reasonable basis for the latter to believe that the principal has authorized the alleged agent to do the acts in question.” Dentech Corp., 294 NLRB 924, 925 (1989).[1]
*846 Federal appeals courts have likewise looked to common-law principles of agency — which require actions on the part of the employer to clothe an employee with apparent authority- — -in determining whether a person reasonably could believe that an individual speaks for, or acts for, the employer. See, e.g., NLRB v. Georgetown Dress Co., 537 F2d 1239, 1244 (4th Cir 1976) (“Whether an agency relationship exists under the [NLRA] is to be determined under the general common law of agency.”); NLRB v. Birmingham Publishing Co., 262 F2d 2, 8 (5th Cir 1958) (employee speaks for employer “[i]f an employee * * * is clothed with the apparent authority to speak for the employer”).[2]
*847 The cases on which the majority relies are not to the contrary. The majority does invoke some broadly worded phrases in several cases, which it takes to suggest that— contrary to the wording and legislative history of the Taft-Hartley Act and the weight of federal case law interpreting it — common-law agency principles are no longer relevant. Examined in proper context, however, those statements provide no support for the conclusion that the majority asserts.
For example, the majority cites NLRB v. Hart Cotton Mills, 190 F2d 964, 974 (4th Cir 1951), for the proposition that employer responsibility for acts of supervisory employees “is not determined by applying principles of agency or respondeat superior.” 360 Or at 830. That case, however, was about the significance of an employer’s lack of ratification of certain anti-union statements that had been made by one of its supervisors. The company argued that it was not responsible for those statements because they were contrary to its policy and had not been ratified by it. The court agreed with the employer. It began by noting that, in Heinz, the Supreme Court had concluded that express authority or ratification were not required. Id. at 974. It then went on to conclude that, nevertheless, “isolated statements by supervisors, contrary to the proven policy of the employer and neither authorized, encouraged, nor acquiesced in by him, do not constitute substantial evidence of’ an unfair labor practice. Id. The decision thus offers no support for the majority’s view that ordinary principles of apparent agency are no longer relevant.
For another example, the majority cites Amalgamated Clothing Workers of America, AFL-CIO v. NLRB, 371 F2d 740, 744 (1966), for the proposition that employer responsibility for violations of the NLRA “is not controlled by the refinements of the law of agency.” 360 Or at 829. Again, however, the statement was made in refutation of an argument that the employer had not expressly authorized the actions or statements of certain individuals who had made anti-union statements. The court rejected the argument, noting that the individuals were involved directly in the company’s affairs, spoke with employees about management expectations and employee grievances, and made hiring recommendations to the management. “In this setting,” the court *848 explained, “responsibility under the Act is not controlled by refinements of the law of agency. The [c]ompany’s silence may properly be taken by the Board as recognition or ratification” of the actions of the individuals at issue. 371 F2d at 744. The court said nothing about abandoning general principles of agency law that govern apparent authority.
The majority also cites a number of decisions holding that certain executive officers and management personnel may be held to speak for their employers in determining whether the employer committed an unfair labor practice. 360 Or at 828-29. Those decisions, however, are entirely consistent with the common-law agency principles that I have mentioned. Their rationale is that the companies for which those persons worked had given the executive officers and managers individual authority to set company business policies. See generally Unfair Labor Practice, within National Labor Relations Act or Similar State Statute, Predicated upon Statements or Acts by Employees Not Expressly Authorized by Employer, 146 ALR 1062, § II (1943) (“[I]t is well established that an employer is responsible for statements or acts of those executive officers whose duty it is to determine his general business policies, including his labor policy.”). That only makes sense. When executive or management personnel have individual authority within a company to set company policies, an employee may reasonably believe that they also have authority to speak for the company as to labor matters.
For example, the majority cites Morgan Precision Parts v. NLRB, 444 F2d 1210, 1215 (5th Cir 1971), a case involving anti-union statements of the company’s owner. Similarly, the majority relies on Madison Brass Works, Inc. v. NLRB, 381 F2d 854, 857 (7th Cir 1967), and NLRB v. Lightner Pub. Corp. of Illinois, 113 F2d 621, 625 (7th Cir 1940), both of which involved a company’s president. And it relies on NLRB v. Jahn & Ollier Engraving Co., 123 F2d 589, 593 (7th Cir 1941), which involved executive officers of the company, as well as foremen whom the court found “did exercise some authority over employees and were in a strategic position to translate to their subordinates the policies and desires of the management.” Id.
*849 In this case, Campbell had no such individual authority to speak for the City of Lebanon. She had no authority to hire, fire, or discipline any city employee. She had no authority to participate as a member of the city’s labor negotiating team.
Certainly, Campbell was a member of the City Council. In some cases, depending on the terms of the statute or charter that defines the authority of a member of a governing body, an individual member of a city council may have certain day-to-day management authority. See, e.g., Portland City Code 3.06.010 (management of departments are assigned to individual members of the City Council). And, in such cases, an employee might have good reason to believe that such a council member speaks for the city on labor matters.
But that is not the case here. Under the terms of the Lebanon City Charter, Campbell had no individual authority at all. The only authority she possessed was to vote as a member of the council. Without a majority of the council concurring, her views had no force and effect at all, as a matter of law.
Under the reasoning of the very federal cases on which the majority relies, then, the conclusion should be that no reasonable person could believe that Campbell spoke for the city as to labor matters. The linchpin of those cases— the individual authority of the executive or management personnel — has no application to a multi-member governing body like the Lebanon City Council.
In that regard, it is worth noting that the majority has cited not one federal court or NLRB decision holding a company liable under the NLRA based on the actions of a single member of a multi-member body, such as a board of directors. I submit that there is a reason for that: Because individual members of such boards have no individual authority, there is no basis for an employee to believe that they speak for the company. Thus, even under the majority’s test, the claim against the city in this case fails.
In short, the majority’s opinion is contrary to settled law. It conjures a test not from the text of Oregon law, but *850 from a misreading of federal cases construing a provision of the NLRA that the Oregon legislature chose not to adopt. Moreover, the majority ignores the fact that, even under its test, the unauthorized actions of a single member of a multi-member governing body cannot amount to an unfair labor practice.
At bottom, the majority’s decision is predicated on its view that the legislation must be read “expansively” to “broadly protect public employees’ rights.” 360 Or at 834. With respect, such appeals to general policy provide no justification for avoiding the terms of the statute that the legislature enacted into law. As this court cautioned in Halperin v. Pitts, 352 Or 482, 496, 287 P3d 1069 (2012), “we simply do not have authority to rewrite the terms of a statute to accomplish what we may suspect the legislature intended but did not actually enact into law.” In my view, the statute should be interpreted and applied as written, without the gloss borrowed from a mistaken understanding of case law interpreting a portion of a federal statute that the Oregon legislature never adopted.
Balmer, C. J., and Brewer, J., join in this dissenting opinion.

 The NLRB’s reliance on common-law agency principles of apparent authority is longstanding and continues down to the present. See, e.g., Pratt (Corrugated Logistics), LLC, 360 NLRB No. 48 (2014) (labor relations consultant held out by employer as conduit for transmitting information to and from management held to be agent of employer); Int’l Union, Security, Police & Fire Prof'ls of America, 360 NLRB No 57 (2014) (union steward held to be union’s agent because he handled grievances, represented employees in disciplinary meetings, and resolved disputes without union president’s approval); Snelling Personnel Services, Inc. Bill Mudd Electric Co., 37 NLRB AMR 2 (2002) (holding that “[u]nder the common law principles of agency and general and apparent authority,” agent acted for employer); Sterling Faucet Co., 203 NLRB 1031, 1038 (1973) (agents had apparent authority because they “were held out to the employees by the employer as its agents”); Smith’s Transfer Corp. of Staunton, Va., 162 NLRB 143, 157 (1966) *846 (“[T]he respondent employer by acquiescing in, and encouraging, interrogation and polling of the men * * * clothed these employees in the eyes of their fellow workers with the apparent authority to speak for the employer.”). I am not aware of a single federal court decision holding that the board has erred in relying on those principles.

 The majority acknowledges that “some” courts so hold, but insists that others apply a broader test that disregards that restriction of common-law agency. The majority is mistaken about that. Nearly every federal circuit court has held that the NLRA incorporates common-law principles of apparent authority. See, e.g., Fleming Companies, Inc. v. NLRB, 349 F3d 968, 973 (7th Cir 2003) (“To hold an employer liable, the individual who made the statement must act as an agent of the employer. An agent has apparent authority when an employer takes steps that would reasonably lead third persons to believe that the designated employee was authorized to take certain actions on behalf of the employer.” (Internal citations omitted.)); Overnite Transp. Co. v. NLRB, 140 F3d 259, 266 (DC Cir 1998) (“Apparent authority exists when the principal engages in conduct that, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.” (Internal quotation marks omitted.)); BE&K Const. Co. v. NLRB, 23 F3d 1459, 1466 (8th Cir 1994) (“Congress has set out the policy that the usual principles of agency apply in determining liability for unfair labor practices.”); NLRB v. Int’l Union of Electrical, Radio & Machine Workers, AFL-CIO, Local 745, 759 F2d 533, 534 (6th Cir 1985) (“Agency may be found to exist on the basis of actual authority, ratified authority or apparent authority. In this case the union clothed the stewards with apparent authority.”); Laborers and Hod Carriers Local No. 341 v. NLRB, 564 F2d 834, 839 (9th Cir 1977) (“Common law agency principles determination of this factual issue; therefore, implied or apparent authority is sufficient.”); NLRB v. Local Union No. 3, Intern. Broth. of Elec. Workers, AFL-CIO, 467 F2d 1158, 1159 (2d Cir 1972) (“Common law rules of agency govern; authority may be implied or apparent, as well as express.”); United Steelworkers of America v. CCI Corp., 395 F2d 529, 532 (10th Cir 1968) (Taft-Hartley Act “provided that the actual fact of authorization or subsequent ratification would not be controlling of agency questions. This has been properly construed as opening the way for application of general rules of agency and particularly the rules of apparent authority.”); NLRB v. Mississippi Products, 213 F2d 670, 673 (5th Cir 1954) (“[S]ince respondent clothed [an individual] with apparent authority to speak for it and did actually on one occasion use his voice to make an antiunion speech, it may fairly said to be responsible for his conduct.” (Internal quotation marks omitted.)).