Argued and submitted March 1, 2016, reversed and remanded July 12, 2017

COLUMBIA CASCADE COMPANY,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

CITY OF FERNANDINA BEACH,
a city in the State of Florida,
*Defendant-Respondent,*

*and*

Todd B. KROHN,
an individual;
and Site Creations, LLC,
a dissolved Florida limited liability company,
*Defendants.*

Multnomah County Circuit Court
121013287; A158696

400 P3d 1001

John M. Berman argued the cause and filed the briefs for appellant.

Candice R. Broock argued the cause for respondent. With her on the brief were James P. Laurick and Kilmer, Voorhees & Laurick, P.C.

Before Tookey, Presiding Judge, and DeHoog, Judge, and Sercombe, Senior Judge.

**SERCOMBE, S. J.**

In this breach of contract case, plaintiff Columbia Cascade Company (Columbia) appeals a general judgment in favor of defendant City of Fernandina Beach (the city) that dismissed Columbia's claim against the city with prejudice and awarded the city attorney fees, costs, and disbursements. The case arose after both Columbia and Columbia's sales representative, Site Creations, LLC, sent the city invoices for the same playground equipment that Columbia had manufactured for and delivered to the city. Instead of paying the invoice from Columbia, the city paid Site Creations' invoice. Columbia never received payment for the equipment and, ultimately, brought an action against the city for breach of contract.[1] The parties filed cross-motions for summary judgment. The trial court concluded that Site Creations had actual or apparent authority to receive payment on Columbia's behalf. Accordingly, it granted the city's motion for summary judgment and denied Columbia's motion. On appeal, Columbia assigns error to the trial court's summary judgment ruling. As explained below, we conclude that there are issues of fact with respect to apparent authority and, therefore, the trial court properly denied Columbia's motion for summary judgment and erred in granting the city's motion. Accordingly, we reverse and remand.

"In appeals involving cross-motions for summary judgment, we review the record for each motion in the light most favorable to the party opposing it." *Johnson v. State Board of Higher Education*, 272 Or App 710, 712, 358 P3d 307, *rev den*, 358 Or 527 (2015). In this case, on summary judgment, the following facts are undisputed.

Columbia manufactures and sells playground equipment, including a line of equipment called TimberForm; TimberForm is a registered trademark of Columbia. Columbia sells its products through independent sales representatives and, at the time of the events giving rise to this action, Site

---

[1] Columbia's complaint also included claims against Site Creations and an individual defendant who was a member of that LLC. Columbia obtained a default judgment against those defendants, and those claims are not at issue on appeal.

Creations was Columbia's exclusive sales representative in northern Florida.

Columbia and Site Creations entered into a Sales Representative Agreement (SRA) that set forth the terms of the relationship. The services Site Creations was to provide were defined as follows:

"2.3 Scope of Services.

"a. REPRESENTATIVE represents to COLUMBIA that it has and will establish significant contacts in the fields of landscape architecture, architecture, engineering, recreation, education, government, and construction in the territory described in 2.1.c. COLUMBIA authorizes REPRESENTATIVE to solicit orders for COLUMBIA products as defined in this Agreement within REPRESENTATIVE territory. Because COLUMBIA has exclusive arrangements in other territories, REPRESENTATIVE is not authorized to quote or sell COLUMBIA products for delivery or installation outside REPRESENTATIVE territory without the prior written authorization of COLUMBIA.

"b. COLUMBIA authorizes REPRESENTATIVE to solicit specifications, inquiries, and orders for submission to COLUMBIA for review, approval, quotation, and final order confirmation. COLUMBIA will be responsible for the preparation of the necessary documentation in connection with sales orders.

"c. It is understood that REPRESENTATIVE does not have any authority to contract on behalf of COLUMBIA."

(Capitalization in original.) Site Creations was to receive a commission on its sales, but no commission was payable until Columbia had been paid in full for the equipment. The "Commission" section of the SRA also provided that, "[i]n the event that REPRESENTATIVE is delinquent in making any payments owing COLUMBIA when due and payable, COLUMBIA shall have the right to offset against commissions payable to REPRESENTATIVE for the purpose of reducing said delinquent payments." (Capitalization in original.) Site Creations was required to "forward all orders promptly to COLUMBIA and each order shall be subject to COLUMBIA acceptance." (Capitalization in original.) For its part, Columbia was to "promptly forward" to Site Creations "all product inquiries received" by Columbia from "potential

or actual customers" within the agreed upon territory for Site Creations' "attention and customer service." Section 3.6 of the SRA addresses invoices and collections:

"a.   COLUMBIA shall send all invoices in connection with orders solicited by REPRESENTATIVE directly to the customer with a copy to REPRESENTATIVE. COLUMBIA is responsible for all collections and bad debts. COLUMBIA also has the right to exercise complete control over the approval of all customer credits, orders, and contracts.

"b.   COLUMBIA shall not have the right to debit REPRESENTATIVE for the loss of any sum involved in any invoice from COLUMBIA to the customer, unless that customer is also the REPRESENTATIVE or REPRESENTATIVE has guaranteed payment in writing.

"c.   REPRESENTATIVE shall forward promptly to COLUMBIA all payments that REPRESENTATIVE may collect from customers of COLUMBIA and shall not co-mingle such payments owed to COLUMBIA with REPRESENTATIVE funds."

(Capitalization in original.)

In October 2011, Site Creations provided the city with a quote for the purchase of TimberForm playground equipment. The quote stated that the price, including freight, would be $19,896.35, and that the checks should be made payable to "TimberForm, Inc., 1300 SW Sixth Avenue, Ste 310, Portland, OR 97201-3464." Shortly thereafter, the city issued a purchase order for the equipment to Site Creations; the purchase order listed Site Creations as the vendor. Site Creations forwarded the purchase order to Columbia.

After receiving the purchase order, Columbia sent the city an order confirmation on Columbia letterhead that "confirm[ed the city's] order placed through [Columbia's] regional representative, Site Creations, LLC." The confirmation document identified Columbia as the seller, confirmed the identity of the purchaser (City of Fernandina Beach, Parks & Recreation Department), included Columbia's address, noted that Columbia made TimberForm playground equipment, and listed a number of terms of sale. In the terms of sale, the confirmation stated that all "orders may be accepted only by Columbia Cascade Company

headquarters staff located in Portland, Oregon, U.S.A. Orders may be accepted only by the sending of a written Confirmation to the purchaser. Regional representatives do not have authority to enter into contracts on behalf of the company." The city attorney made some modifications to the terms of sale, deleting an arbitration clause and modifying a section entitled "Purchase Order Terms." As modified, that section provided: "All terms and conditions of any purchase order, or other writing, issued by the buyer which are inconsistent with the terms and conditions set forth here are null and void. See City of Fernandina Beach purchase order." After being exchanged between Columbia and the city, the confirmation was eventually signed by a representative of Columbia, the city manager, and the city attorney. The city did not receive a copy of the SRA defining the relationship between Columbia and Site Creations.

On November 17, 2011, Columbia sent a "Letter of Transmittal" along with three sets of drawings, and requested that the city "have one set marked 'approved' and returned to [Columbia]." Later, in December 2011, Site Creations sent an email to the director of the city's Parks and Recreation Department that asked for approval of "shop drawings" of the playground. The city confirmed that the plans were "satisfactory" and, in early 2012, Columbia shipped the playground equipment to the city. Columbia sent to the city invoices for the playground equipment dated February 24, 2012; the city received those invoices. Site Creations sent the city its own invoice for the playground equipment dated February 29, 2012. The city did not respond to Columbia's invoice and, instead, sent a check, payable to Site Creations, in response to the invoice received from Site Creations. Columbia never received payment for the playground equipment it had manufactured and shipped to the city.

Columbia filed this action in which it set forth a claim for breach of contract against the city, seeking $19,896.35 for the playground equipment it had manufactured for and shipped to the city. Eventually, the parties filed cross-motions for summary judgment. Columbia, in its motion, argued that there was no genuine issue of material fact and that, as a matter of law, there was a contract

between Columbia and the city and the city breached the contract by failing to pay Columbia for the playground equipment. The city, in its motion, asserted that its agreement was with Site Creations, not Columbia, and that it was "legally obligated to, and did, pay Site Creations for the playground equipment." The city also argued that Columbia had given Site Creations "actual or apparent authority to act as [Columbia's] agent." Specifically, according to the city, Columbia had "provided Site Creations with apparent authority to enter into contracts with purchasers, and the City had a right to rely on that apparent authority when it paid Site Creations under the terms of the contract." With respect to the city's agency argument, Columbia responded that there was no basis to conclude that "Site Creations had any actual or apparent authority to do anything other than to solicit orders for Columbia," and that the agency discussion, in the context of this case, "makes no sense" because, "inconsistent with [the idea of] Site Creations being an 'agent' and receiving payment for Columbia," the city "paid Site Creations' invoice, issued in its own name and for itself."

In its order on the parties' cross-motions for summary judgment, the trial court observed that there was "no real dispute about the essential, if discouraging, facts presented in this case." Based on the supporting documents filed with the summary judgment motions, the court rejected the city's contention that it had a contract with Site Creations rather than Columbia. The court concluded that, as a matter of law, there was an agreement between the city and Columbia pursuant to which the city was required to pay Columbia for the playground equipment. However, the court concluded that Site Creations had actual or apparent authority to "accept payments" for Columbia and, therefore, "payment to Site Creations was payment to [Columbia]" and there "was no breach of contract." Accordingly, the court granted the city's summary judgment motion and denied Columbia's motion. Columbia appeals the resulting judgment in the city's favor.

On cross-motions for summary judgment, each party has the burden of demonstrating that there are no genuine issues of material fact and that the moving party

is entitled to judgment as a matter of law. *Johnson*, 272 Or App at 714. We review the trial court's ruling on summary judgment for errors of law. *Id.*

In their briefs, the parties do not challenge or otherwise dispute the trial court's ruling that there was a contract between Columbia and the city that required the city to pay Columbia for the playground equipment Columbia had manufactured and delivered to the city. Instead, the parties' contentions center on the trial court's conclusion with regard to agency. In particular, Columbia contends that the trial court incorrectly concluded that Site Creations "had actual or apparent authority to issue its own invoice and to collect money in its own name" and, therefore, that the city paid Columbia by paying its agent. The city responds that the undisputed facts establish that, as a matter of law, Site Creations had actual or apparent authority to receive payment for the playground equipment.

As the Supreme Court explained in *Eads v. Borman*, 351 Or 729, 735-36, 277 P3d 503 (2012),

> "[c]lassically, an agency relationship results from the manifestation of consent by one person to another that the other shall act on behalf and subject to his control, and consent by the other so to act. The agency relationship can arise either from actual consent (express or implied) or from the appearance of such consent. In either circumstance, the principal is bound by or otherwise responsible for the actual or apparent agent's acts only if the acts are within the scope of what the agent is actually or apparently authorized to do."

(Internal quotation marks and citations omitted.)

We begin by discussing actual authority, which "may be express or implied. When a principal explicitly authorizes the agent to perform certain acts, the agent has express authority. However, most actual authority is implied: a principal implicitly permits the agent to do those things that are reasonably necessary for carrying out the agent's express authority." *Taylor v. Ramsay-Gerding Construction Co.*, 345 Or 403, 410, 196 P3d 532 (2008) (internal quotation marks omitted). "[I]n both circumstances, * * * the principal's consent to the agency and right to control the agent

are essential." *Checkley v. Boyd*, 198 Or App 110, 134, 107 P3d 651, *rev den*, 338 Or 583 (2005). Here, Site Creations' authority was defined in the SRA.

According to Columbia, under the express terms of the SRA, Site Creations was to "locate sales opportunities and to quote prices" to potential customers. Columbia would then "take over and control the orders once submitted to it, do all of the invoicing and collections and pay the sales representative a commission after" Columbia was paid. Columbia asserts that it did not delegate to Site Creations any authority to invoice customers and obtain payments. The city, on the other hand, takes the position that the SRA "does not limit Site Creations' authority to accept payments" and "includes provisions intended to address situations where Site Creations received payments from customers." Specifically, the city asserts that section 3.6 of the SRA "conferred upon Site Creations actual authority to accept payments."

We observe that, in their arguments, the parties emphasize different aspects of the acts undertaken by Site Creations. Columbia, for its part, focuses on Site Creations' conduct of issuing to the city an invoice in Site Creations' own name, and obtaining a check payable to itself, not to Columbia. The city, in contrast, discusses whether Site Creations, more broadly, had express authority to "accept payments." In our view, framed either way, the SRA did not delegate to Site Creations actual authority to act as it did in this case. In other words, nothing in the SRA delegates express authority to Site Creations to issue invoices or obtain payment for playground equipment and those acts by Site Creations were not reasonably necessary for carrying out its express authority under the SRA.

As noted, in a section entitled "Scope of Services," the SRA sets forth what acts Columbia authorized Site Creations to undertake on its behalf. Specifically, it authorized Site Creations to "solicit orders for Columbia products" within the territory set forth in the SRA. (Capitalization omitted.) It further authorized Site Creations to "solicit specifications, inquiries, and orders for submission to Columbia for review, approval, quotation, and final order

confirmation." (Capitalization omitted.) However, Columbia was to prepare "the necessary documentation in connection with sales orders" and, as the SRA specifically stated, "It is understood that [Site Creations] does not have authority to contract on behalf of Columbia." (Capitalization omitted.) The section of the SRA defining the scope of services that Site Creations was to perform for Columbia does not contain any express delegation of authority to Site Creations to invoice customers or obtain payments for playground equipment.

Indeed, as noted, under the section of the SRA dealing with invoices and collections, Columbia made clear that *it* would "send all invoices in connection with orders solicited by [Site Creations] directly to the customer." Thus, it is clear that Site Creations had no actual authority to issue an invoice to the city seeking payment for the playground equipment. And no term of the SRA expressly provided Site Creations with authority to collect payments on accounts. On the contrary, pursuant to the same section of the SRA, *Columbia* was "responsible for all collections" and also had "complete control over the approval of all customer credits, orders, and contracts."

The section of the agreement that the city points to, which provides, as noted, that Site Creations "shall forward promptly" to Columbia any payments that it collects from Columbia's customers, does not alter our conclusion. That provision does not purport to delegate to Site Creations authority to collect payments from Columbia's customers. Instead, it lays out the course of action Site Creations was required to take in the event it were to receive such a payment; it was required to forward the payment promptly to Columbia without commingling it with Site Creations' own funds. In sum, under the SRA, Columbia did not expressly delegate authority to Site Creations to send invoices to customers or to seek and obtain payment from Columbia's customers. Indeed, the opposite is true: Under the SRA, Columbia was to issue invoices and collect payments from its customers. Furthermore, the city does not point to and we do not perceive any way in which Site Creations' acts in this case could have been reasonably necessary to carry out

any of its express authority under the contract. Accordingly, we agree with Columbia that, to the extent that the trial court concluded that Site Creations had actual authority to invoice and receive payment from the city, that conclusion was incorrect as a matter of law.

That conclusion does not resolve the issue of apparent authority, which we turn to next. Apparent authority is the power held by an agent "to affect a principal's relations when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Harkness v. Platten*, 359 Or 715, 723-24, 375 P3d 521 (2016) (internal quotation marks omitted). "'Apparent authority to do any particular act can be created only by some conduct of the principal which, when reasonably interpreted, causes a third party to believe that the principal consents to have the apparent agent act for him on that matter.'" *Wiggins v. Barrett & Associates, Inc.*, 295 Or 679, 687-88, 669 P2d 1132 (1983) (quoting *Jones v. Nunley*, 274 Or 591, 595, 547 P2d 616 (1976)); *see Badger v. Paulson Investment Co., Inc.*, 311 Or 14, 24, 803 P2d 1178 (1991) (the theory of apparent authority applies when an agent acts beyond his or her actual authority but with appearance of authority). Thus, there "are two keys to the analysis: (1) the principal's representations; and (2) a third party's reasonable reliance on those representations." *Eads*, 351 Or at 736.

Regarding the first element, "[a]n agent's acts, standing alone and without some action by the principal, cannot create authority to bind the principal." *Taylor*, 345 Or at 410. "Instead, the principal must take some affirmative step in creating the appearance of authority, one that the principal either intended to cause or should realize likely would cause a third party to believe that the putative agent has authority to act on the principal's behalf." *Harkness*, 359 Or at 722 (internal quotation marks omitted). "The principal's words, conduct, or other representation need not be made directly to or witnessed directly by the third party for the principal to be liable under a theory of apparent authority; rather, the representation of authority need only be *traceable* to the principal." *Id.* (emphasis in original). Furthermore, "when a principal cloaks

an agent with actual authority to perform certain tasks, that actual authority may create the appearance of authority to perform other, related tasks." *Id.* at 723; *see Taylor,* 345 Or at 411. And when a principal "appoints an agent to a position that carries generally recognized duties, a principal may create apparent authority to perform those duties." *Harkness,* 359 Or at 723 (internal quotation marks omitted).

With respect to the element of reasonable reliance, the third party must actually rely on the principal's representation when dealing with the agent and that reliance must be objectively reasonable. *Eads,* 351 Or at 737; *Taylor,* 345 Or at 410. "In assessing the reasonableness of the third party's reliance, a court must consider what is customary and usual for certain positions or within certain professions." *Harkness,* 359 Or at 723.

Here, Columbia contends that the trial court erred in concluding that, on the facts presented, as a matter of law, Site Creations had apparent authority to take payment from the city. The city, for its part, points to different facts in the record in support of its view that Site Creations did, indeed, have apparent authority. Based on the record in this case, we conclude that summary judgment in favor of either party was inappropriate because there are issues of fact with respect to apparent authority.

The parties each point to different evidence in discussing the question whether Site Creations had apparent authority to take payment from the city in this case and, in our view, there are facts and inferences that could be drawn from the record to support each side's views. For example, although the quote did not form the agreement between the parties in this case, it stated that checks should be made to "TimberForm"—Columbia's trademark—at Columbia's address in Portland. Furthermore, the contract was expressly between Columbia and the city; the confirmation states that orders must be accepted by staff at Columbia headquarters and that "[r]egional representatives do not have authority to enter into contracts on behalf of the company." Columbia had numerous communications directly with the city, including correspondence back and forth regarding the final agreement between the parties, and

transmitting plans for approval. Furthermore, as Columbia points out, its issuance of an invoice was "inconsistent with Site Creations being authorized to issue its invoice, also."

On the other hand, Site Creations had actual authority to solicit orders for Columbia and Columbia forwarded to Site Creations product inquiries it received from potential or actual customers for Site Creations to provide "attention and customer service." In the confirmation, Columbia confirmed to the city that Site Creations was "our regional representative." Although it provided limits on Site Creations' authority in some respects, it did not inform the city that regional representatives are not authorized to issue invoices or accept payment nor did it otherwise specifically limit to whom payment must be made. Also, importantly, as part of the parties' course of dealing, Site Creations continued to be involved in the deal after the quote was transmitted to Columbia. After Columbia sent plans to the city, it was Site Creations that followed up, communicating with the city's representatives in order to obtain approval of the "shop drawings" for the equipment Columbia was then to manufacture. Given that the city dealt with Site Creations as acting on behalf of Columbia throughout the transaction, a factfinder could conclude that the city would have reasonably understood Site Creations to continue to act on behalf of Columbia with respect to demanding and accepting payment for the equipment. And, according to the city's representatives, the city actually understood Site Creations to have authority to accept payment for the playground equipment.[2]

In sum, in our view, there is evidence from which a jury could find that Columbia apparently consented to Site Creations demanding and accepting payment for the

---

[2] We also note that, although the city did not have the SRA before paying Site Creations for the playground equipment, as discussed above, there is a provision therein stating that Site Creations "shall forward promptly to Columbia all payments that [Site Creations] may collect from customers of Columbia and shall not co-mingle such payments owed to Columbia with [Site Creations'] funds." (Capitalization omitted.) Although the city would not have formed an understanding of Site Creations' authority based on a document that it did not have, the SRA does support an inference regarding *Columbia's* understanding of the appearance of authority that might arise as a result of its arrangement with Site Creations. That is, it supports an inference that Columbia knew that its arrangement with Site Creations might lead customers to understand that payment for playground equipment could be made to Site Creations.

playground equipment. There is also evidence from which a jury could find that Columbia did not appear to so consent. In other words, in our view, on the record before us, there are issues of fact that preclude summary judgment on the issue of apparent authority. Accordingly, the trial court correctly denied Columbia's motion for summary judgment and incorrectly granted the city's motion.

Reversed and remanded.